# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DERRICK CALDWELL,

|                       |     |                              |
|-----------------------|-----|------------------------------|
| Petitioner,           |  :  | Case No. 3:16-cv-80          |
| - vs -                |     | District Judge Thomas M. Rose |
|                       |     | Magistrate Judge Michael R. Merz |
| WARDEN, Noble Correctional Institution, | : | |
| Respondent.           |     |                              |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Petition (ECF No. 2), Respondent's Return of Writ (ECF No. 6), and Petitioner's Reply ("Traverse," ECF No. 7).

Caldwell pleads the following grounds for relief:

> **Ground One:** Evidence was insufficient to convict Petitioner.
>
> **Supporting Facts:** The drugs found in Crystal Caudell's house on February 28, 2013, were not found in Petitioner's possession, either actual or constructively at the time of the search, thus the State of Ohio did not prove beyond a reasonable doubt that Petitioner possessed the drugs at the time of his arrest.
>
> **Ground Two:** Ineffective assistance of trial counsel.
>
> **Supporting Facts:** During custodial[sic.], Petitioner made statements to Detective Roman he was a drug dealer and gave specifics about his supplier and how he packaged his drugs for sale. Had Counsel filed a motion to suppress, the highly prejudicial statements would not have been admitted at trial.

1

(Petition, ECF No. 2.)

**Procedural History**

Petitioner Derrick Caldwell was indicted by the Greene County Grand Jury on June 14, 2013, and charged with one count of engaging in a pattern of corrupt activity (R.C. 2923.32(A)(1))(Count 1); one count of conspiracy to commit engaging in a pattern of corrupt activity (R.C. 2923.01(A)(2) and 2923.32(A)(1))(Count 2); five counts of drug trafficking (heroin/cocaine) (R.C. 2925.03(A)(1))(Counts 3, 5, 7, 9, 11 and 13); five counts of drug possession (heroin/cocaine) (R.C. 2925.11(A))(Counts 4, 6, 8, 10, 12, 14); and one count of tampering with evidence (R.C. 2921.12(A)(1))(Count 15).

After plea negotiations, Counts One and Two were dismissed and Caldwell pleaded guilty to Counts 3, 4, 5, and 6. By agreement, Counts 3 and 4 were merged under Ohio Revised Code § 2941.25 as were Counts 5 and 6. Caldwell proceeded to trial on the remaining counts. The trial judge acquitted him of tampering with evidence; the jury could not reach a verdict on Counts 1 and 2; the jury convicted on Counts 9, 10, 12, and 14; and the trial judge merged Count 4 with Count 3, Count 6 with Count 5, and Count 10 with Count 9. The trial judge then imposed an aggregate sentence of ten years imprisonment.

Caldwell appealed and the conviction was affirmed. *State v. Caldwell*, 2015-Ohio-2551, 2015 Ohio App. LEXIS 2454 (2nd Dist. June 26, 2015), appellate jurisdiction declined, 143 Ohio St. 3d 1502 (2015). Caldwell filed an application to reopen the direct appeal under Ohio R. App. P. 26(B) to raise a claim of ineffective assistance of appellate counsel, but the Second District dismissed

2

the application as both untimely and without merit.  *State v. Caldwell*, Case No. 2013-CA-76 (2nd

Dist. Dec. 9, 2015)(unreported, copy at ECF No. 5, PageID 233, et seq.)  Caldwell did not appeal to

the Ohio Supreme Court from this decision.

On January 23, 2014, Caldwell filed a petition for post-conviction relief under Ohio Revised

Code § 2953.21 which he attempted to amend February 1, 2016.  The Warden reports that the

Common Pleas Court has not yet decided this petition, but that none of the original nineteen claims

are included in the Petition filed in this Court (Return, ECF No. 6, PageID 669-70).  Petitioner also

reports that he has exhausted all state remedies on the claims made in the Petition and "[t]herefore, it

is appropriate for the Court to consider Petitioner's request for habeas corpus relief."  (Traverse, ECF

No. 7, PageID 700.)

# Analysis

## Ground One:  Insufficiency of the Evidence

In his First Ground for Relief. Caldwell alleges the State did not prove beyond a

reasonable doubt that the drugs found in Crystal Caudell's house on February 28, 2013, were in

his constructive possession.  The Warden defends this claim on the merits and asserts that the

Second District's decision of the claim was neither contrary to nor an objectively unreasonable

application of clearly established federal law.  On direct appeal,  Judge Wellbaum first recited

the facts the appeals court found were shown by the evidence:

3

[*P4]  In late February 2013, Fairborn Police Detective, Benjamin Roman, was contacted by a confidential informant, Aaron May, who stated that he was able to purchase a quantity of heroin from an individual known to May as "Rondo." [footnote omitted] At that time, Roman, who was a member of the Greene County A.C.E. Task Force ("A.C.E."), was able to identify Rondo as an individual named Derrick Caldwell. A.C.E. had received several complaints regarding a subject named Rondo who was dealing drugs out of various locations in the City of Fairborn. After Roman showed May a picture of Caldwell, May identified Caldwell as Rondo.

[*P5]  Pursuant to Roman's usual procedure, May's calls to Caldwell were recorded. Once a meeting to purchase drugs was set up, May was first searched to make sure he had no money or contraband. May was then outfitted with a wire, and a surveillance team was positioned nearby to video-tape and monitor the transaction. For the first transaction, which occurred on February 22, 2013, May called Caldwell, arranged to buy heroin, and was directed to go to 11 West Parkwood in Fairborn, Ohio. At that time, May purchased 3 unit doses of heroin for $21 with money that A.C.E. had provided. Caldwell did not deliver the drugs, however. Instead, a woman, later identified as Rashea Martin, brought out the drugs and accepted the money. Martin was living with Caldwell and testified that she gave Caldwell the money from the drug deal.

[*P6]  When May returned to Detective Roman's vehicle, he gave the 3 unit doses of heroin to Roman. May was again searched for contraband and drugs, and nothing was found. Roman then went to the police station and booked the evidence into the property room consistent with his usual procedure, which was to field test a small portion of the drugs and send the rest to the Miami Valley Regional Crime Lab for testing. Roman then returned to the A.C.E. office, downloaded the phone call and audio to a computer, and reviewed the video-tape, which appeared to be working properly.

[*P7]  A second transaction occurred on February 27, 2013, in another location, because the police had received information that Caldwell had moved to a different address. This transaction took place at the new address of 123 North First Street, Apt. 7, in Fairborn, Ohio. On that date, May again called Caldwell, and asked to purchase 6 units of heroin for $42. Caldwell directed May to go to Casey's Drive-Thru, which was located near First Street. Again, after the usual procedure of being searched and outfitted with recording equipment, May went to the location and obtained 6 units of heroin. Caldwell did not appear, and the sale was again

4

consummated by Martin, who took the money back to Caldwell. As before, the police recorded all conversations between May and Caldwell, and video-taped the sale.

[**P8**]  After receiving the 6 unit doses of heroin and searching May for money and contraband, Roman booked the evidence into the property room and sent the heroin to the lab for testing. Based on the transactions that had occurred, Roman obtained a search warrant for the location at 123 North First Street, and the warrant was served on  February 28, 2013. Upon knocking and entering, the police found three people located inside: Caldwell, Martin, and Crystal Caudell, who was the individual who had leased the apartment. [footnote omitted] Both Crystal and Martin testified on behalf of the State at trial.

[**P9**]  Crystal indicated that she had met Caldwell in December 2011, when she was released from the Dayton Correctional Institution after serving time for drug charges. Caldwell subsequently came and stayed at Crystal's apartment. Crystal had known Martin since around the middle of January 2013, when Caldwell brought Martin, whom he called "Baby Mama," to the apartment. A few weeks later, Crystal kicked them both out. They then returned to her apartment a few days before the drug bust. Crystal testified that she saw drugs there, but did not call the police because she was an addict and was using.

[**P10**]  According to Crystal, Martin was on the couch sleeping when the police knocked on the door on February 28, 2013. At the time, Caldwell was sitting on the opposite end of the couch, and Crystal was in the kitchen. When Crystal looked out the peephole, she said, "Oh, my F'ing God, it's the Greene County Task Force." Trial Transcript, Vol. II, p. 196. Caldwell appeared to hear her, because she looked back at him when she said this. Caldwell then stuffed something underneath Martin's head and ran to the back of the house with a plastic bag in his hands. The plastic bag had items of foil in it, and contained drugs.

[**P11**]  When the police came in, they set off a flash-bang device to distract the occupants. The task force members then came in and secured the scene. Crystal testified that when this happened, Caldwell was coming back from the rear of the apartment, where the bathroom was located.

[**P12**]  Detective Craig Black, who was also assigned to A.C.E., took custody of Caldwell, patted him down, and removed his wallet. At that time, before *Miranda* warnings were given, and

before Black had asked any questions, Caldwell spontaneously said, "The white girl in the apartment, it's hers," and "The drugs inside the residence are hers." Trial Transcript, Vol. I, pp. 140-141. Caldwell also told Black that the drugs were in the couch. *Id.* at p. 141.

[**\*P13**] Caldwell was subsequently given *Miranda* warnings, which Black video-taped. He was then taken back inside the apartment. At that time, Detective Roman said, "Rondo, follow me," because it was a name that he knew Caldwell went by. *Id.* at p. 71. Without hesitation, Caldwell got up and followed Roman back towards the bedroom. Caldwell then said, "Wait, what did you call me? My name is Rondo — I mean, Derrick." *Id.* Roman then explained to Caldwell that he knew Caldwell went by the name of Rondo and that the police were there for a drug search warrant.

[**\*P14**] After initially denying any involvement, Caldwell said the drugs in the apartment were Crystal's. He then began to talk with Roman in a low, whispering voice, as if he did not want Crystal or Martin, who were still in the apartment, to hear him. Caldwell told Roman that his drugs were supplied by someone in Dayton. Roman asked Caldwell about the drugs they had located during the search warrant, which were pretty large sizes of foils containing heroin, and Caldwell said that he paid a dollar per individually wrapped foil. Roman also asked Caldwell if he bought the drugs already broken down into foils or bought in bulk amount. In response, Caldwell said he bought them already broken down into individual foils, which according to Roman, would be unusual. During the interview, Caldwell also claimed ownership of a black duffel bag that was found inside the apartment. The bag did not contain drugs, but contained packing material like foil and Hefty Zip-lock bags with writing. For example, one of the bags said, "Boy" with an equal sign on it. Both the police and Crystal testified that heroin is called "Boy," and cocaine is called "Girl."

[**\*P15**] During the search, the police found a very large sandwich bag in the center section of the couch, underneath the cushion. The bag contained multiple bags of heroin and cocaine. Two bags of heroin contained a total of 550 foil packets, a bag of cocaine contained 355 foil packets, for a total weight of about 7.81 grams of cocaine, and there was another bag of loose cocaine weighing about 3.60 grams. The heroin bags of wrapped foils were labeled "Boy equals 300," while the cocaine bag of wrapped foils was labeled, "Girl equals 300." Additional numbers were written on the bags as well, such as 2880 and 1850. According to Roman, drug

dealers mark their products based on weight or unit doses, depending on how they sell them, and also mark the price. For example, "Boy equals 300" and 1850 would indicate 300 unit doses of heroin valued at about $1,850.

[*P16] A second bag of cocaine, with a total weight of about 3.02 grams, was found on the couch. The police also found another plastic bag floating in the toilet. This bag was labeled "Boy equals 300" and "1850," and contained 255 foil-wrapped packets of heroin. Both Martin and Crystal testified that they were familiar with Caldwell's handwriting. Martin identified the handwriting on all the plastic bags, including those containing drugs and those in the duffel bag, as belonging to Caldwell. Crystal also matched Caldwell's handwriting to the plastic bag found in the toilet.

[*P17] The total number of units of heroin found was 805, and the total weight of the cocaine found was slightly over 14 grams. Caldwell was subsequently indicted in June 2013 on 15 counts. Counts One and Two were first degree felonies based on participation in an enterprise, and were dismissed by the State prior to trial. In addition, the State dismissed counts 11 and 13, which alleged trafficking in heroin and cocaine on the date of the search.

*State v. Caldwell, supra.*

Having recited the facts, the court then decided Caldwell's first assignment of error as follows:

[*P21] Caldwell's First Assignment of Error states that:
The Jury Verdict Was Against the Manifest Weight of the Evidence, and the Evidence Presented Was Insufficient, as a Matter of Law, to Prove the Appellant's Guilt Beyond a Reasonable Doubt.

[*P22] Under this assignment of error, Caldwell contends that the verdict was both against the manifest weight and supported by insufficient evidence because the government failed to prove beyond a reasonable doubt that he actually or constructively possessed the drugs found in the apartment. In this regard, Caldwell focuses on the following points: (1) he denied ownership of the drugs; (2) Detective Roman's testimony was inconsistent concerning whether drugs were found under the couch or in the couch; (3) State witnesses were given lenient treatment for their testimony; (4) Martin testified that the occupant of the apartment,

Crystal, sold drugs from the apartment; and (5) despite Crystal's testimony that Caldwell stuffed a bag of drugs under Martin's head, there was no evidence that drugs were found under Martin's head.

[*P23]  "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). We noted in *Cherry* that:

> The proper test to apply to the inquiry is the one set forth in *paragraph two of the syllabus of State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*Cherry* at ¶ 9.

[*P24]  In contrast, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 380. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

[*P25]  "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v.*

*McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

[**\*P26**] In the case before us, Caldwell was convicted of possession of and trafficking in heroin in an amount less than 10 unit doses; possession of heroin in an amount equal to or exceeding 500 unit doses but less than 2,500 unit doses; and possession of cocaine in an amount equal to or exceeding 10 grams but less than 20 grams.

[**\*P27**] With respect to convictions for possession of drugs, R.C. 2925.11(A) provides that "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Similarly, R.C. 2925.03(A) states that "No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog; * * *."

[**\*P28**] There is no dispute in this case about the quantity of drugs found in the apartment; the only issue raised is whether the State established that Caldwell knowingly possessed the drugs.

[**\*P29**] "Possession, 'having control over a thing or substance,' R.C. 2925.01(K), may be actual or constructive." (Citations omitted.) *State v. Wiley*, 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, ¶ 20. "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737, ¶ 23, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "Circumstantial evidence alone may be sufficient to support the element of constructive possession." *State v. Bland*, 10th Dist. Franklin No. 10AP-327, 2010-Ohio-5874, ¶ 14, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991).

[**\*P30**] We have also previously stated that "[a]lthough mere presence in the vicinity of drugs does not prove dominion and control, readily accessible drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." *State v. Townsend*, 2d Dist. Montgomery No. 18670, 2001-Ohio-1485, 2001 WL 959186, *3 (Aug. 24, 2001).

[**\*P31**]  In the case before us, the evidence sufficiently established that Caldwell was in constructive possession of the drugs. According to Crystal, Caldwell and Martin had previously stayed at her apartment, and had again returned to stay a few days before the search occurred. This is consistent with the information police obtained, i.e., that Caldwell was dealing drugs from a new location from the one he had used in the sale to May a week earlier. The day before the search, Martin had delivered drugs to May at a location in close proximity to the apartment, at Caldwell's direction.

[**\*P32**]  Crystal further testified that when Caldwell heard that the Greene County task force was at the door, he shoved something underneath Martin's head. Caldwell then ran towards the back of the house, where the bathroom was located, with a plastic bag of drugs in his hands. A bag of drugs, with Caldwell's handwriting on the bag, was subsequently found in  the toilet.

[**\*P33**]  Furthermore, Caldwell, himself, told the police that drugs were in the couch, but claimed they belonged to Crystal. Caldwell also admitted that he owned a black duffel bag that was found in the apartment. This bag contained foils like those in which the drugs were wrapped, and a plastic bag inside the duffel bag bore the same identifying information as the bags that contained drugs. All the markings on the bags were also in Caldwell's handwriting.

[**\*P34**]  Although Detective Roman confused the location of the drugs in the couch by referring a few times to drugs under the couch, and a few times to drugs under the couch cushion, this clearly was a slip of the tongue, as Roman definitively stated that a very large bag of foils containing heroin and cocaine was found underneath a couch cushion in the living room. Trial Transcript, Vol. I, p. 77. Furthermore, Roman did not assist in the search, but was conducting interviews. Detective Black, who did conduct the search, also stated definitively that there was a large sandwich bag of heroin and cocaine in the center section of the couch, underneath a cushion. *Id.* at p. 142. Furthermore, regarding the contention that the drugs were not found under Martin's head, Crystal testified that Martin was sleeping on the couch. However, Crystal did not say exactly where on the couch Martin's head was located, and there is no evidence that Martin was still sleeping on the couch when the police conducted the search. In fact, Martin testified that she woke up when the police set off the flash-bang device.

10

[*P35]  It is true that the testimony of May, Martin, and Crystal would be subject to impeachment because they may have received some type of deal from the State regarding potential drug charges. "While ordinarily the credibility of a witness may be attacked by proof of conviction of crime but not by proof of indictment, this rule is subject to the exception that a witness in a criminal case may be asked if he is under indictment for a crime if such fact would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely." *State v. Hector*, 19 Ohio St.2d 167, 168, 249 N.E.2d 912 (1969), paragraph five of the syllabus. *Accord State v. Durant*, 159 Ohio App.3d 208, 2004-Ohio-6224, 823 N.E.2d 506, ¶ 33 (2d Dist.).

[*P36]  Likewise, the jury may be made aware of deals the State has with defendants in other cases, or with informants, as this can affect witness credibility. *See, e.g., State v. Rankin*, 10th Dist. Franklin No. 10AP-1118, 2011-Ohio-5131, ¶ 29-30; *State v. Brooks*, 3d Dist. Seneca No. 13-04-17, 2005-Ohio-548, ¶ 9; and *State v. Jackson*, 2d Dist. Greene No. 2009 CA 21, 2010-Ohio-1127, ¶ 17 . In such situations, the jury is free to decide whether the witness's testimony is credible in view of the consideration he or she has received for testifying. *Rankin* at ¶ 30. In this regard,

> The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58; *State v. Clarke* (Sept. 25, 2001), 10th Dist. No. 01AP-194, 2001 Ohio App. LEXIS 4302. Consequently, although an appellate court acts as a "thirteenth juror" when considering the manifest weight of the evidence, it also must give due deference to the fact finder's determination of the witnesses' credibility. *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 28; *State v. Hairston*, 10th Dist. No. 01AP-1393, 2002-Ohio-4491, ¶ 74.

*Rankin* at ¶ 29.

[*P37]  By convicting Caldwell of possession and trafficking of heroin and of possession of cocaine, the jury chose to credit the testimony of the State's witnesses. Because we are required to give deference to the fact-finder, we cannot conclude that the judgment is against the manifest weight of the evidence. For the same reasons, the judgment is supported by sufficient evidence.

11

Furthermore, as we noted, the circumstantial evidence of Caldwell's guilt was more than adequate.

[*P38]  Accordingly, the First Assignment of Error is overruled.

*State v. Caldwell, supra.*

In arguing this claim on the merits, Petitioner quotes the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard and the requirement of double deference on such claims to the trial jury and the state court of appeals under *Brown v. Konteh,* 567 F.3d 191 (6th Cir. 2009), and *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam)(Traverse, ECF No. 7, PageID 702-04).  The question before the Court, then, is not the legal standard for Ground One, but its application.

The Second District found there was sufficient evidence to prove beyond a reasonable doubt that Caldwell was in constructive possession of the drugs charged in this case.  *State v. Caldwell, supra,* at ¶ 31.  State law establishes the elements of crimes which then must, by virtue of the Due Process Clause, be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. 358 (1970).  Judge Wellbaum quoted the definition of possession under Ohio law in *State v. Caldwell, supra,* at ¶ 29, noting that under Ohio law, constructive possession can be proved by circumstantial evidence alone.

In arguing his First Ground for Relief, Caldwell notes that impeaching evidence was introduced with respect to each of the State's witnesses (Traverse, ECF No. 7, PageID 704-05).  However, proof beyond a reasonable doubt does not require unimpeached witness testimony.  Rather, the question of whether to believe an impeached witness is for the jury to decide.

Petitioner notes that witness Caudell admitted being addicted and that the syringes found in her apartment were hers.  But she also testified along with witness Martin that Caldwell's handwriting was on several of the packages of drugs found in the apartment, including a package

found in the toilet.  And of course the jury also heard Caldwell's admissions to Detective Roman of his involvement in drug dealing.

Of course constructive possession is enough for violation of the statute; it is not just an alternative way of proving actual possession, as Caldwell seems to argue at PageID 706.  He is of course correct that constructive possession requires proof of ability to exercise dominion and control.  But that does not have to be direct evidence.  There was ample circumstantial evidence of Caldwell's ability to control the heroin and cocaine seized from Ms. Caudell's apartment.  The Second District's finding to that effect is not an unreasonable application of *Jackson v. Virginia*, *supra*.  Therefore the First Ground for Relief should be dismissed.

**Ground Two:  Ineffective Assistance of Counsel**

In his Second Ground for Relief, Caldwell claims his trial attorney was ineffective for failing to file a motion to suppress the admissions he made to Detective Roman.  He acknowledges that the correct standard for evaluating such a claim is set out in *Strickland v. Washington,* 466 U.S. 668 (1984).  Caldwell acknowledges that his counsel did file a motion to suppress, but then withdrew it.  He asserts that it would have been granted if not withdrawn.

Caldwell raised this claim as his second assignment of error on direct appeal and the Second District decided it as follows:

> [*P39]  Caldwell's Second Assignment of Error states that:
> Appellant's Trial Counsel Provided Ineffective Assistance, Resulting in Prejudice to Appellant.
>
> [*P40]  Under this assignment of error, Caldwell contends that trial counsel was ineffective because he withdrew Caldwell's motion to suppress and allowed the State to present evidence of Caldwell's statements at trial. Specifically, these statements

included Caldwell's admission to Detective Roman that he was a drug dealer, as well as specifics about Caldwell's supplier and how Caldwell packaged drugs for sale. Caldwell argues that absent these statements, the evidence was insufficient to show that he was in actual or constructive possession of the drugs.

[*P41] "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness." *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.).

[*P42] "Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. * * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citation omitted.) *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29.

[*P43] "'[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000 Ohio 448, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Likewise, withdrawal of a motion to suppress does not "constitute per se ineffective assistance of counsel." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 14, citing *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

[*P44] "Instead, the decision to withdraw a motion to suppress 'constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful.'" *Id.*, quoting *Dominguez* at ¶ 20, which in turn, cites *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996). *Accord State v. Spencer*, 10th Dist. Franklin No. 03AP-579, 2004-Ohio-4102, ¶ 23. "Filing a motion to suppress is not without risks, and the fact that counsel filed a motion for leave to file the motion to suppress, and later withdrew that motion, is compelling evidence of a tactical decision." *Madrigal* at 389.

14

[*P45] The record in the case before us is devoid of evidence indicating that the motion to suppress Caldwell's statements would have succeeded. The statements about which Caldwell complains occurred after he was given *Miranda* warnings. There is no evidence in the record indicating any impropriety in the administration of the warnings, nor is there any evidence of police coercion. Finally, as we noted, even without Caldwell's admission of his own drug activity, the record contains sufficient evidence supporting the jury's verdict.

[*P46] Based on the preceding discussion, the Second Assignment of Error is overruled.

*State v. Caldwell, supra.* Thus Judge Wellbaum gave two reasons why Caldwell did not receive ineffective assistance of trial counsel regarding the motion to suppress. First, withdrawing a motion after one has been filed makes it appear the decision was tactical. Second and more important, Caldwell points to no evidence of record which would have supported granting a motion to suppress.

In arguing his Second Ground for Relief, Caldwell claims the record shows he was in custody when he made the inculpatory statements and does not show a waiver of *Miranda* rights (Traverse, ECF No. 7, PageID 709). This is directly contrary to the Second District's finding that he made his admissions after *Miranda* warnings, but Caldwell fails to cite any evidence which would permit this Court to find Judge Wellbaum was wrong.

Caldwell writes at some length about how harmful to his case the admissions were in light of the (perceived) weakness of the circumstantial evidence against him. Without doubt the admissions were powerful evidence against him. But he points to no evidence that they were obtained involuntarily in violation of his Fifth Amendment rights.

The Second District's decision on the ineffective assistance of trial counsel claim is neither contrary to nor an objectively unreasonable application of *Strickland, supra.* Therefore the Second Ground for Relief should be dismissed with prejudice.

15

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 4, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).